UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM DUTTON, JR., STACY WHITE, and SHANNON WHITE )<br><br>Plaintiffs, )<br><br>v. )<br><br>WELLS FARGO BANK, N.A., )<br><br>Defendant. ) | Case No. 11-CV-0352-CVE-PJC |

## OPINION AND ORDER

Now before the Court are plaintiffs' Motion to Remand (Dkt. # 10) and Amended Motion to Remand (Dkt. # 16). Defendant Wells Fargo Bank, N.A. (Wells Fargo) removed this case from the District Court of Creek County, State of Oklahoma on June 6, 2011 on the basis of diversity jurisdiction. Dkt. # 2. Plaintiff asks this Court to remand on the ground that (1) defendant waived its right to remove; and (2) this Court lacks jurisdiction as the parties are not completely diverse. Defendant argues that it has not waived its right to remove and that complete diversity exists.

**I.**

The parties to this action were previously involved in two state court litigations in Creek County, Oklahoma, wherein defendant attempted to foreclose on a mortgage on property owned and/or a debt guaranteed by plaintiffs. Dkt. # 2-1 at 2. In March 2010, a settlement agreement was entered into by the parties in one of the state court cases whereby defendant agreed to:

> (a) dismiss its action in foreclosure; (b) waive all fees and costs associated with the foreclosure action; (c) execute a Settlement Agreement which contains Wells Fargo Bank, N.A.'s agreement to repair and/or "clean-up" the Plaintiffs' credit reports which have been damaged due to the wrongful filing of foreclosure actions; and (d) pay $3,150 to the Plaintiffs for their attorneys' fees.

Id. at 2-3. Plaintiffs now allege that defendant has breached this agreement by not correcting plaintiffs' credit reports. Id. at 3. Plaintiffs further allege that defendant has engaged in "ongoing, deliberate and willful" harassment of plaintiffs, including, inter alia, placing threatening telephone calls to plaintiffs, sending investigators to plaintiffs' property, and erroneously accusing plaintiffs of failing to make mortgage payments. Id. at 3.

Based on these allegations, plaintiffs brought suit in state court on March 11, 2011, alleging claims for breach of contract, abuse of process, malicious prosecution, intentional infliction of emotional distress and violation of "a number of state and federal consumer protection statutes." Id. at 4-5. Defendant filed an answer in state court on May 3, 2011, denying the substantive allegations in the petition. Dkt. # 2-2 at 4-6. Subsequently, defendant sent plaintiffs a request for admission, requesting that plaintiffs admit they are seeking damages in excess of $75,000. Dkt. # 2-2 at 9. Plaintiffs served their response to the request for admission on June 1, 2011, stating that they are seeking damages in excess of $75,000. Id. at 9-10. Defendant then removed this action on June 6, 2011 on the basis of diversity jurisdiction.

## II.

Removal to federal court is possible for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28. U.S.C. § 1441. District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000, exclusive of interest and costs, and is between . . . citizens of different [s]tates." 28 U.S.C. § 1332(a). Under § 1332, a party must show that complete diversity of citizenship exists between the adverse parties. Symes v. Harris, 472 F.3d 754, 758 (10th Cir. 2006).

Where a defendant chooses to exercise the right of removal, it must file a notice of removal "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the

2

initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . [or] after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).  "[G]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).[1]

### III.

Plaintiff argues that the removal of this action was improper because (1) the prior settlement agreement contains a valid forum selection clause that is exclusive to the state courts of Oklahoma; and (2) complete diversity is lacking because one of the plaintiffs and defendant are both citizens of California.  Defendant argues that the forum selection clause in the settlement agreement is permissive rather than mandatory, and that complete diversity exists because it is a citizen of South Dakota rather than California.

### A.

The settlement agreement entered into by the parties in March 2010 contains a provision stating:

> This Agreement shall be construed and interpreted in accordance with the laws of the State of Oklahoma and the Parties consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Oklahoma for purposes of resolving any disputes which may hereinafter arise under this Agreement.

---

[1] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

Dkt. # 19-10 at 6. Neither party disputes the validity of this forum selection clause. However, plaintiffs argue that it should be interpreted to mean that the parties agreed that venue is proper *only* in a state court in Oklahoma, whereas defendant argues that it has not consented *exclusively* to venue in Oklahoma state court.

The first question is whether state or federal common law should be used in interpreting the forum selection clause. In general, the answer depends on whether forum selection clauses are procedural or substantive. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). However, the Court need not explore this question because the result would be the same regardless of whether Oklahoma or federal common law is applied. Cf. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 320 (10th Cir.1997) (noting that the court need not decide whether to apply Colorado state law or federal common law because there are no material discrepancies between Colorado law and federal common law regarding forum selection clauses); Zenergy, Inc. v. Novus Operating Co., No, 07-CV-128-CVE-PJC, 2007 WL 1160327, at *1 (N.D. Okla. Apr. 17, 2007) (applying federal law to interpretation of similar clause). Under both federal and Oklahoma common law, forum selection clauses are prima facie valid and should be enforced unless they can be shown to be unreasonable under the circumstances of the case. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir.1992); Adams v. Bay, Ltd., 60 P.3d 509, 510 (Okla. Ct. App. 2002). Both federal and Oklahoma courts may refuse to exercise jurisdiction based on the parties' intent concerning the venue of litigation. Barker Leasing, Inc. v. State Ins. Fund, 910 P.2d 1102, 1103 (Okla. Ct. App. 1995); Milk 'N' More, 963 F.2d at 1346. Because both parties cite to federal cases, the Court will also focus on the Tenth Circuit law regarding the interpretation of forum selection clauses. See Zenergy, Inc., 2007 WL 1160327, at *1.

As an initial matter, the Court finds that the phrase "consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Oklahoma" means that the parties consented to venue and jurisdiction in the Oklahoma state courts. See Am. Soda, LLP v. U.S. Filter Wastewater Group, Inc., 428 F.3d 921, 925-26 (10th Cir. 2005) (holding that "Courts of the State of Colorado" referred to the state courts of Colorado and not federal courts located in Colorado); see also Zenergy, Inc., 2007 WL 1160327, at *2 (holding that "District Court of Tulsa County, Oklahoma" referred to state court and not federal court). Defendant does not dispute this interpretation. Dkt. # 19 at 11.

Given that the Court finds that the forum selection clause refers to the Oklahoma state courts, and not federal courts located in Oklahoma, the next inquiry is whether the clause is permissive or mandatory. See Excell, 106 F.3d at 321 (noting that forum selection clauses fall into two general categories - mandatory or permissive). A mandatory selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum." Id. (internal quotations omitted). Furthermore, "a waiver of one's statutory right to remove a case from state to federal court must be clear and unequivocal." Milk 'N' More, Inc., 963 F.2d at 1346 (internal quotations omitted). A permissive forum selection clause permits suit to be brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. Id.

Plaintiffs argue that the clause is mandatory and designates that the parties consented to venue only in state court in Oklahoma to the exclusion of all other courts. Therefore, their argument goes, defendant waived its right to remove the action to federal court. On the other hand, defendant argues that the clause is permissive, and while it consented to venue in state court in Oklahoma, there is no language in the clause that limits venue only to Oklahoma state court.

5

Giving the language of the clause at issue its plain meaning, the Court concludes that the clause is permissive and does not prohibit an action in a court other than Oklahoma state court. Most notably, the clause does not include any term of exclusivity such as "exclusive," "sole," or "only."  See K & V Scientific Co. v. Bayersiche Motoren Werke Aktiengesellschaft, 314 F.3d 494, 500 (10th Cir. 2002) (holding that forum selection clause was permissive based, in part, on absence of these terms of exclusivity).  Similarly, the portion of the clause pertaining to venue does not contain any mandatory language such as "shall," "must," or "will."  See Milk 'N' More, Inc., 963 F.2d at 1346 (use of the word "shall" generally indicates mandatory intent).  In the absence of such language, the Court finds that the clause is permissive. See Jim's Maint. & Sons, Inc. v. Target Corp., No. 08-CV-1084-M, 2009 WL 3151354, at *2 (W.D. Okla. Sept. 24, 2009) (holding forum selection clause was permissive where it lacked exclusive or obligatory language and stated proceeding "may be brought" in certain courts); Fremont Paving & Redi-Mix, Inc., No. 07-CV-1646-LTB-BNB, 2008 WL 501439, at *2 (D. Colo. Feb. 21, 2008) (holding forum selection clause was permissive where it lacked exclusive or obligatory language and stated that venue is "agreed to be in" a certain court); Fin. Sys.& Equip., Inc. v. Easy Sys., Inc., No. 99-CV-2555-GTV, 2000 WL 714331, at *2 (D. Kan. May 17, 2000) (finding forum selection clause was permissive where it did not contain exclusive or obligatory language and stated that a dispute "may be resolved" in a certain court).  Furthermore, the language of the clause does not rise to the level of a "clear and unequivocal" waiver of defendant's right to remove the action.

**B.**

Plaintiffs next argue that the removal was improper because complete diversity is lacking. Plaintiffs assert that defendant is a citizen both of the state listed as its main office in its articles of association (South Dakota) and of the state in which it has its principal place of business

6

(California). Defendant does not dispute that its principal place of business is in California. However, defendant argues that, because it is a national banking association, there can be only one state in which it has citizenship, namely, the state listed in its articles of association.

Defendant is a national bank, which is a corporate entity chartered not by a state, but by the Comptroller of the Currency of the U.S. Treasury. For diversity jurisdiction purposes, Congress has provided that national banks "shall . . . be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. This is in contrast to corporations, which are deemed to be a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The issue before the Court is whether "located," as used in § 1348, means only the state listed as its main office in its articles of association, as argued by defendant, or whether "located" additionally encompasses the state of defendant's principal place of business, as urged by plaintiffs.

In Wachovia Bank v. Schmidt, 546 U.S. 303, 306-07 (2006), the Supreme Court considered whether, as used in § 1348, "located . . . signal[ed] . . . that a bank's citizenship is determined by the place designated in the bank's articles of association as the location of its main office," or rather "that a national bank is a citizen of every state in which it maintains a branch[.]" The Court stated that the word "located" is not one of "enduring rigidity" and that it has "no fixed, plain meaning." Id. at 313-14. Instead, it "gains its precise meaning from context." Id. at 307. Thus, the Court carefully considered the legislative history of § 1348, stating:

> When Congress first authorized national banks in 1863, it specified that any "suits, actions, and proceedings by and against [them could] be had" in federal court. National banks thus could "sue and be sued in the federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a federal question in the usual sense." State banks, however, like other state-incorporated entities, could

7

> initiate actions in federal court only on the basis of diversity of citizenship or the existence of a federal question.
>
> Congress ended national banks' automatic qualification for federal jurisdiction in 1882. An enactment that year provided in relevant part:
>
> "[T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun[.]"
>
> Under this measure, national banks could no longer invoke federal-court jurisdiction solely "on the ground of their Federal origin;" instead, for federal jurisdictional purposes, Congress placed national banks "on the same footing as the banks of the state where they were located."

Id. at 309-10 (internal citations omitted).

The Court further explained that, "[i]n 1887 revisions to prescriptions on federal jurisdiction, Congress replaced the 1882 provision on jurisdiction over national banks and first used the 'located' language today contained in § 1348. . . . Like its 1882 predecessor, the 1887 Act 'sought to limit . . . the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks [were] so limited.'" Id. at 310-11 (internal citations omitted). The Court further noted that it was not until 1994 that Congress provided "broad authorization for national banks to establish branches across state lines." Id. at 314. Thus, up until that point, "a national bank was almost always 'located' only in the State in which it was 'established,' under any of the proffered definitions of the two words. . . ." Id.

Having considered this legislative history and Congress' intent to achieve jurisdictional parity between state and national banks, the Court held that:

> a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located. Were we to hold, as the Court of Appeals did, that a national bank is additionally a citizen of every State in which it has established a

8

> branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities. Congress, we are satisfied, created no such anomaly.

Id. at 307.

The question of whether a national bank could be a citizen of the state in which its principal place of business was located, in addition to a citizen of the state it designated as its main office, was not before the Court. However, the Court noted:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

Id. at 317 n.9 (internal citations omitted).

The case currently before the Court is one of these outlier situations identified by the Wachovia Court – where the national bank's principal place of business is not located in the same state as its main office. Prior to Wachovia, several courts had held that a national bank is a citizen both of the state where its main office is located and also of the state of its principal place of business. See, e.g., Horton v. Bank One, N.A., 387 F.3d 426 (5th Cir. 2004); Firstar Bank, N.A. v. Faul, 253 F.3d 982 (7th Cir. 2001). These are the cases on which plaintiffs now urge this Court to rely. However, these cases are not squarely on point, as the question before those courts was whether a national bank could be a citizen of each state in which it maintained a branch.

9

Since Wachovia, courts have split over the citizenship of national banks. Some courts have interpreted the Wachovia decision narrowly and held that a national bank can be a citizen only of the state in which it designated its main office. See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC, __ F.3d __, 2011 WL 3862589, at *6 (8th Cir. Sept. 2, 2011) (rejecting notion that Congress intended to retain jurisdictional parity between state and national banks); Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006) ("Wachovia Bank held that national banks are citizens only of the states in which their main offices are located"); DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1122 (N.D. Cal. 2010) ("lower courts since [Wachovia] have taken the view that the 'main office' standard is the *only* way to determine the citizenship of a national bank") (emphasis in original).

Other courts have interpreted Wachovia more broadly and determined that a national bank is a citizen of both the state where its main office is located as well as of the state where it maintains its principal place of business. See Stewart v. Wachovia Mortgage Corporation, No. 11-CV-6108-MMM, 2011 WL 3323115, at *5 (C.D. Cal. Aug 2, 2011) (holding that Wells Fargo Bank, N.A. is a citizen of California); Goodman v. Wells Fargo Bank, NA, No. 11-CV-2685-JFW, 2011 WL 2372044, at *3 (C.D. Cal. June 1, 2011) (holding that Wells Fargo Bank, NA is a citizen of California); Saberi v. Wells Fargo Home Mortgage, No. 10-CV-1985- DMS (BGS), 2011 WL 197860, at *3 (S.D. Cal. Jan. 20, 2011) ("for purposes of diversity jurisdiction, Wells Fargo Bank is both a citizen of South Dakota, where it has designated its main office, and California, where it has its principal place of business").

In Stewart, the court analyzed the Wachovia decision as follows:

> First, [Wachovia] did not decide whether a national bank is "located"
> in the state where it has its principal place of business, when that
> location is different from the state in which its main headquarters are

> situated because this issue was not before it. Second, the Court noted that "'located' is not a word of 'enduring rigidity,' . . . but one that gains its precise meaning from context," [Wachvoia], 546 U.S. at 306–07. It thus signaled that the defintional content it provided for the word did not foreclose the possibility that further context would support an expanded definition. Finally, and most significantly, the Court emphasized Congress' desire to provide jurisdictional parity for state-chartered banks and national banks. A state-chartered bank is a citizen not only of the state in which it is incorporated, but of the state where its principal place of business is located. 28 U.S.C. § 1332. Since Congress wished national banks to have the same access to federal courts as state-chartered banks, interpreting § 1348 so as to foreclose the possibility that a national bank is "located" where it maintains its principal place of business would not further Congress' purposes. Consequently, the court . . . concludes that Wells Fargo is a California citizen.

Stewart, 2011 WL 3323115, at *5.

Having carefully reviewed the Court's opinion in Wachovia, as well as the cases decided thereafter, and with no Tenth Circuit precedent on this issue, the Court finds the reasoning of the court in Stewart persuasive. As such, this Court finds that defendant is a citizen of both South Dakota, the state in which it identifies its main office, and of California, the state in which it maintains its principal place of business.[2]

Plaintiffs assert that Plaintiff Dutton is also a citizen of California, and defendant does not dispute this fact. See Dkt. # 19 at 9. Thus, complete diversity is lacking and the case must be remanded.

---

2   In their motion, plaintiffs urge the Court to consider statements regarding citizenship made by defendant in another unrelated case. Dkt. # 16 at 4. The Court does not find these particular statements relevant to the determination of defendant's citizenship as a matter of law and has not relied on those statements.

11

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Remand (Dkt. # 10) and Amended Motion to Remand (Dkt. # 16) are **granted.**  The Court Clerk is directed to remand this case to the District Court of Creek County.

**DATED** this 28th day of September, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT